**STAR DIRECT TELECOM, INC.,**
**a California corporation, et**
**al., Plaintiffs,**

v.

**GLOBAL CROSSING BANDWIDTH,**
**INC., a California corporation,**
**Defendant.**

**No. 05–CV–6734T.**

United States District Court,
W.D. New York.

March 21, 2011.

David J. Edwards, Philip G. Spellane, Harris Beach LLP, Pittsford, NY, Alex M. Weingarten, Eric B. Carlson, Spillane Weingarten LLP, Los Angeles, CA, David G. Crocker, Patrick D. Crocker, Crocker & Crocker, PC, Kalamazoo, MI, for Plaintiffs.

Eric A. Linden, Jaffe, Raitt, Heuer & Weiss, P.C., Southfield, MI, Michael J. Shortley, III, Global Crossing North America, Inc., Pittsford, NY, for Defendant.

### DECISION & ORDER

MARIAN W. PAYSON, United States Magistrate Judge.

### PRELIMINARY STATEMENT

Plaintiffs United States Telesis, Inc. ("U.S. Telesis") and Star Direct Telecom, Inc. ("Star Direct") have brought this action against defendant Global Crossing Bandwidth, Inc. ("Global Crossing") alleging breach of contract claims, claims under Sections 201 and 202 of the Communications Act, 47 U.S.C. §§ 201 and 202, and various tort claims. (Docket ## 1, 13). At all relevant times, the three companies provided telecommunication services to other companies and consumers. Plaintiffs assert, among other claims, that Global Crossing breached agreements with them by restricting and thereafter terminating plaintiffs' telecommunications services to the United Kingdom and by billing them for improper charges. (Docket # 1). Global Crossing has filed counterclaims against plaintiffs arising from their failure to pay Global Crossing the amounts it billed them under the agreements, including monthly minimum usage charges. (Docket # 17).

Plaintiff Star Direct filed for bankruptcy protection on September 22, 2009. (Docket # 137). On February 1, 2010, the bankruptcy stay was lifted, permitting Global Crossing to proceed on its counterclaims against Star Direct. (Docket # 178). Despite the lifting of the stay, Star Direct has advised this Court through its local counsel that it does not intend to participate further in this action. (Docket # 179).

Currently pending before the Court is U.S. Telesis's motion to compel Global Crossing to supplement its disclosure under Rule 26(e) of the Federal Rules of Civil Procedure by providing internal emails from 2004 relating to an agreement executed by the parties in April 2004 known as the "Concurrence Agreement." (Docket # 190). For the reasons discussed below, I grant U.S. Telesis's motion.

### FACTUAL BACKGROUND

#### I. The Instant Motion

The latest dispute in this case relates to U.S. Telesis's claim that Global Crossing has withheld relevant internal emails from the 2004 period regarding the Concurrence Agreement.[1] The Concurrence Agreement provided that Star Direct's account was to be combined with U.S. Telesis's account to allow U.S. Telesis to benefit from a more favorable call rate that Star Direct had negotiated with Global Crossing. (Docket ## 190 at 5–6; 215 at 15). Before the Concurrence Agreement was negotiated, however, each plaintiff had executed a separate carrier services agreement with Global Crossing that required each company to pay a "minimum

---

1. U.S. Telesis's motion papers originally framed the dispute more broadly to encompass Global Crossing's alleged failure to produce *any* emails from 2004, internal or external, including emails between the parties. (Docket # 190 at 10–11). Despite Global Crossing's apparent failure to produce emails between the parties generated in 2004, at oral argument U.S. Telesis's counsel acknowledged that U.S. Telesis possesses those emails from its own records (Docket # 199 at 6) and the real focus of this motion is the production of internal email from 2004 related to the Concurrence Agreement. (*Id.* at 5).

monthly usage commitment" charge ("MMUC"). (Docket # 215 at 2–3). Following the Concurrence Agreement, Global Crossing continued to bill each plaintiff for the separate MMUCs. (*Id.* at 4). Plaintiffs contend that this practice constituted a breach of the Concurrence Agreement because, in their view, the Concurrence Agreement relieved them of the obligation to meet two MMUCs. (*Id.* at 3–4). By contrast, Global Crossing asserts that it was plaintiffs who breached their agreements by failing to pay the bills because the Concurrence Agreement did not extinguish or modify plaintiffs' MMUCs obligations under the earlier carrier services agreements. (*Id.* at 4).

In a previously-filed motion for summary judgment, Global Crossing argued that the Concurrence Agreement had never become effective because plaintiffs had failed to provide it with certain financial documents, which was a condition precedent to the contract. (Docket # 215 at 13). Global Crossing based this argument principally upon a 2005 email from Dan Anderson ("Anderson"), Global Crossing's sales representative responsible for the plaintiffs' accounts.[2] (Docket # 191, Ex. 24). U.S. Telesis represents that it did not discover the absence of emails from 2004 until Global Crossing filed its motion for summary judgment and included the 2005 Anderson email. (Docket ## 190 at 18; 191 at ¶ 33).

While the summary judgment motion was pending, U.S. Telesis brought the instant discovery motion challenging Global Crossing's failure to produce any internal emails from 2004, contending that such emails are relevant to Global Crossing's condition precedent defense, as well as its own breach of contract claim under the Concurrence Agreement. (Docket ## 190 at 17, 21; 196 at 3, 7; 202, Ex. 1 at 24). Global Crossing opposes the discovery motion on the grounds that it is untimely because it was not filed until after the close of discovery. (Docket # 195 at 6). Alternatively, Global Crossing asserts that the emails are not reasonably accessible and that their production would be financially

burdensome. (*Id.* at 13). If production is ordered, however, Global Crossing urges that the associated costs be shifted to U.S. Telesis. (*Id.*).

## II. *Relevant Procedural History*

The complaint in this case was filed on December 20, 2005. (Docket # 1). Discovery commenced in mid–2007, following the district court's decision on Global Crossing's motion to dismiss the complaint. (Docket # 28).

U.S. Telesis contends that the following three document requests in Plaintiffs' First Consolidated Document Requests, dated December 14, 2007, require the production by Global Crossing of any responsive internal emails from 2004:

- All documents that refer to, relate to, reflect and/or constitute any communications between Global or its representatives and Plaintiffs or representatives of Plaintiffs. [Document Request No. 3].

- Any and all correspondence, whether by traditional mail, overnight delivery or electronic mail, including all drafts and whether sent or not, between Global or its representatives and Plaintiffs or representatives of Plaintiffs. [Document Request No. 4].

- All documents that refer to and/or relate to the "Concurrence Agreement" identified in Plaintiffs' complaint, including, without limitation, all documents that refer to and/or relate to the negotiation of that Agreement. [Document Request No. 25].

(Docket ## 190 at 11; 191, Ex. 30). Global Crossing responded to these requests on February 4, 2008. It objected to Requests Nos. 3 and 4 as overbroad and burdensome, but agreed to produce documents responsive to Request No. 25. (Docket # 191, Ex. 30). As to the latter, Global Crossing responded, "Global Crossing will produce at a mutually convenient time and location, non-privileged documents responsive to this Request in its possession, custody and control". (*Id.*).

---

**2.** No dispute exists that Global Crossing produced email from the year 2005. (Docket # 190 at 10).

In November 2008, plaintiffs deposed Anderson, an employee of Global Crossing who facilitated the negotiation between the parties of the Concurrence Agreement and communicated most often with plaintiffs' representatives about the agreement. (Docket ## 191, Ex. 5 at 13–14; 195 at 12). During his deposition, Anderson testified that his laptop had "crashed"; although he could not remember specifically when that had occurred, he stated that he believed that it had occurred in 2006. (Docket ## 190 at 11; 191, Ex. 5 at 22).

Discovery continued through 2008 and 2009, during which time this Court addressed several discovery disputes. (Docket ## 41, 75, 85, 101, 135). Despite the frequency and scope of those disputes, plaintiffs never raised any issue of the adequacy of Global Crossing's production of internal emails or other electronically stored information.

On August 26, 2009, plaintiffs' lead counsel, Technology Law Group ("TLG"), moved to withdraw as counsel. (Docket # 128). On August 27, 2009, this Court warned counsel that even if TLG were permitted to withdraw, no further extensions of the September 30, 2009 discovery deadline were likely to be granted.[3] Plaintiffs submitted affidavits on September 9, 2009, affirming that they had instructed TLG to provide no further legal services and understood the Court's intention not to extend the discovery deadline. (Docket ## 132–2 at ¶¶ 5, 7; 132–3 at ¶¶ 5, 7). TLG's motion to withdraw was granted on September 10, 2009, and U.S. Telesis retained new counsel in late September 2009. (Docket ## 133, 138, 140).

Two months later, on November 30, 2009, Global Crossing filed its motion for summary judgment. (Docket # 156). U.S. Telesis filed the instant motion on May 10, 2010. (Docket # 190).[4]

At the June 10, 2010, oral argument on the instant motion, this Court invited Global Crossing to submit a supplemental affidavit of a person with knowledge concerning Global Crossing's efforts to comply with its obligations to produce electronically stored information. (Docket # 199 at 28–29). Global Crossing thereafter submitted an affidavit from Michael Shortley, Esq. ("Shortley"), Vice President and General Counsel, who affirmed that on January 26, 2006, he directed Global Crossing's Director of Wholesale Collections Department to gather relevant documents, including emails, from current and former customer service and sales managers handling plaintiffs' accounts. (Docket # 200, Ex. B). According to Shortley, he thereafter received documents from "appropriate and relevant Global Crossing personnel." (Id. at ¶¶ 1–2). Shortley admits that "Global Crossing did not search for archived electronically stored information in responding to Plaintiffs' discovery demands because of the effort and expense of doing so." (Id. at ¶ 8).

On December 31, 2010, United States District Judge Michael A. Telesca denied Global Crossing's motion for summary judgment, finding that the Concurrence Agreement was valid and enforceable. (Docket # 215 at 14). Specifically, he determined that "[a]lthough Global Crossing contends that the Concurrence Agreement did not become effective because the plaintiff[s] failed to provide updated financial records as required prior to implementation of the Concurrence Agreement, there is no provision in the Concurrence Agreement which states that implementation of the Agreement is subject to the provision of any financial or other documents." (Id. at 13–14). Although Judge Telesca held that the Concurrence Agreement was enforceable, he concluded that material issues of fact remain as to whether that agreement altered or supplanted the plaintiffs' respective monthly minimum usage requirements under their earlier carrier services agreements. (Id. at 14).

## DISCUSSION

I turn first to the question whether, in light of Judge Telesca's determination on

---

3. The Court already had extended the discovery deadlines five times by the time TLG moved to withdraw. (Docket ## 35, 36, 39, 79, 99).

4. U.S. Telesis initially filed the motion on April 20, 2010, but later withdrew that motion and refiled it on May 10, 2010. (Docket ## 187, 193).

Global Crossing's motion for summary judgment, the 2004 internal emails concerning the Concurrence Agreement are still relevant. For the reasons set forth below, I conclude that they are.

## I. *Relevance*

■ The threshold requirement of discoverability under the Federal Rules of Civil Procedure is whether the information sought is "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). To be discoverable, the information "need not be admissible at the trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The relevance standard is thus commonly recognized as sufficiently broad in scope "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citation omitted). *See Daval Steel Prods., a Div. of Francosteel Corp. v. M/V Fakredine,* 951 F.2d 1357, 1367 (2d Cir.1991) (parties entitled to discovery of any matter that appears "reasonably calculated to lead to the discovery of admissible evidence"); *Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland,* 122 F.R.D. 447, 449 (S.D.N.Y.1988) (term "reasonably calculated" in Rule 26(b)(1) means "any possibility that the information sought may be relevant to the subject matter of the action") (internal quotations omitted). *See also Collens v. City of New York,* 222 F.R.D. 249, 252–53 (S.D.N.Y.2004) (following the 2000 amendments, Rule 26(b)(1) "still provides for broad discovery").

U.S. Telesis has represented that it did not discover that Global Crossing had not produced a single internal email from 2004, the year that the Concurrence Agreement was negotiated, until it was preparing to oppose Global Crossing's motion for summary judgment. (Docket # 191 at ¶ 33).[5] U.S. Telesis contends that Global Crossing's internal email concerning the Concurrence Agreement should have been produced in response to its Document Requests Nos. 3, 4 and 25, which are set forth *supra* at 4. (Docket # 190 at 11).

■ Global Crossing's internal emails are not responsive to the third and fourth document requests because those requests are limited to communications and correspondence between the parties. Request No. 25 is not so limited, however, and seeks:

> All documents that refer to and/or relate to the "Concurrence Agreement" identified in Plaintiffs' complaint, including, without limitation, all documents that refer to and/or relate to the negotiation of that Agreement.

(Docket # 200, Ex. C) (request defines documents to include "electronic mail"). Global Crossing maintains that the request should be interpreted to require production only of documents related to the negotiation of the Concurrence Agreement—a limitation that necessarily restricts the request to documents exchanged between the parties. (Docket # 195 at 11). I reject this contention on two grounds. First, Global Crossing offers no authority, nor is this Court aware of any, to support its argument that the clause "including, without limitation" should be read as a limiting clause. Second, even if it could be read in that manner, emails referring or relating to the negotiation of the Concurrence Agreement may still encompass internal emails on that subject.

■ Finally, I turn to the question whether internal Global Crossing emails concerning the Concurrence Agreement remain relevant to the claims following Judge Telesca's summary judgment decision. Judge Telesca squarely rejected Global Crossing's argument that the Concurrence Agreement was

---

**5.** The record contains no facts from which to conclude or reasonably infer whether U.S. Telesis's prior counsel were aware of the alleged deficiency in Global Crossing's production. As discussed *infra,* however, counsel's knowledge does not abrogate Global Crossing's obligation to produce and supplement the production of documents it represented in its discovery response that it would produce. *See Allen v. Colgate-Palmolive Co.,* 1985 WL 191, *3 (S.D.N.Y.1985) (party not relieved of "its duty to produce additional documents responsive to a previous document request merely because the other side is aware of the existence of documents that should have but have not been produced").

not enforceable because U.S. Telesis had not provided certain financial documents. (Docket # 215 at 14). For that reason, U.S. Telesis no longer needs internal communications in order to defend the enforceability of the Concurrence Agreement.

■ That issue aside, U.S. Telesis bases its breach of contract claim in part on Global Crossing's refusal under the Concurrence Agreement to relieve plaintiffs of the obligation to pay two MMUCs. As to this central dispute, Judge Telesca found that issues of fact remain as to "whether or not the Concurrence Agreement ... either reduced Star Direct and Telesis' combined monthly minimum usage requirement, or had no effect on the monthly minimum usage requirement." (*Id.*). As Judge Telesca reasoned,

> While it is true that the Concurrence Agreement is silent as to the monthly minimum usage requirements, in light of the purpose of the Agreement (to combine the accounts of Star Direct and Telesis) and the fact that the monthly minimum requirements of Star Direct were terminated ... there is a question as to what monthly minimum usage provision applied to Telesis.

(*Id.* at 14–15).

Thus, following Judge Telesca's decision, the Concurrence Agreement's effect, if any, on the parties' minimum monthly usage requirements remains a contested issue. Any internal emails concerning that issue, as well as any other open issues under the Concurrence Agreement, remain relevant to the claims and would be responsive to Document Request No. 25.

I turn next to whether Global Crossing should be required to search for and produce any such responsive documents.

## II. *Duty to Search for Electronically Stored Information*

As an initial matter, Global Crossing contends that the pending motion should be denied as untimely because it should be construed as a motion to compel under Rule 37

of the Federal Rules of Civil Procedure, and such motions were required to be filed by or before the close of discovery on September 30, 2009.[6] (Docket # 200 at 4–5). Global Crossing argues the only sanction available for a violation of the duty to supplement under Rule 26(e) is an order of preclusion and not an order compelling production, which is the remedy that U.S. Telesis seeks through this motion. (*Id.* at 5, 9–10). Finally, Global Crossing contends that even if the motion is timely, the emails sought are not reasonably accessible and their production would be financially burdensome. (*Id.* at 4).

### A. *Is the Pending Motion Proper Under Rule 26(e)?*

■ Rule 26(e) provides that a party who has responded to a request for production must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

Fed.R.Civ.P. 26(e). Supplementation "should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches." Fed.R.Civ.P. 26, advisory committee's note (1993). In addition,

> [t]he duty to supplement applies whether the corrective information is learned by the client or the attorney, and extends not only to newly discovered evidence, but to information that was not originally provided although it was available at the time of the initial disclosure or response.

*American Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States,* 2009 WL 1617773, *5 (E.D.N.Y.2009) (internal citations and quotations omitted).

■ Where a party was not required to make a disclosure, however, no supplementa-

---

**6.** In fact, the last deadline set by this Court for motions to compel fact discovery was June 29, 2009. (Docket # 99). Although that deadline

was not extended, the deadline for completion of fact discovery was extended for a limited purpose until September 30, 2009. (Docket # 130).

tion is required. *See e.g., Hnot v. Willis Group Holdings Ltd.,* 2006 WL 2381869, *5 (S.D.N.Y.2006) (Rule 26(e) imposes a continuing obligation to amend responses only to enforceable requests for production); *Ward v. Nat'l Geographic Soc'y,* 2002 WL 27777, *2 (S.D.N.Y.2002) (no duty to supplement under Rule 26(e)(1) where party had no duty to disclose). The duty to supplement continues even after the discovery period has closed. *E.g., McKinney v. Connecticut,* 2011 WL 166199, *2 (D.Conn.2011) ("fact that discovery has closed has no bearing on [d]efendant's duty to supplement under Rule 26(e)"); *Allen v. Colgate–Palmolive Co.,* 1985 WL 191 at *1 ("[t]he obligation to update and supplement responses [to discovery requests] continues even after the close of discovery"). Further, Rule 26(e) itself provides that the court may order a party to supplement its production. Fed.R.Civ.P. 26(e)(1)(B) (party must supplement discovery "as ordered by the court"). *See also Phil Crowley Steel Corp. v. Macomber, Inc.,* 601 F.2d 342, 344 (8th Cir.1979) (determining whether a party has duty to supplement under Rule 26(e) is "committed to the sound discretion" of the court); *Walton v. Best Buy Co., Inc.,* 2010 WL 1494612, *2 (E.D.Mich.2010) (ordering party to supplement responses under Rule 26(e)). Alternatively, a party failing to supplement may be precluded from using the withheld information as evidence on a motion, at a hearing or at trial. Fed.R.Civ.P. 37(c)(1).

■ The plain language of the rule, as well as the relevant caselaw, refutes Global Crossing's contention that U.S. Telesis's only remedy for a Rule 26(e) violation is a preclusion order. In addition, I find that U.S. Telesis's motion is not untimely because the duty to supplement continues even following the close of discovery. *See, e.g., Allen,* 1985 WL 191 at *3 (granting motion to compel under Rule 26(e) filed after the close of discovery and shortly before trial); *In re BankAtlantic BanCorp, Inc.,* 2010 WL 3294342, *5 (S.D.Fla.2010) (motion to compel supplementation filed after close of discovery was not untimely).

## B. *Is Global Crossing Required to Supplement its Production?*

Having found that internal Global Crossing emails from 2004 are relevant to plaintiffs' claims and responsive to Document Request No. 25, I must next determine whether Global Crossing's response to that request was "incorrect or incomplete" within the meaning of Rule 26(e). Although Global Crossing knew that Anderson's laptop had crashed, Global Crossing never searched its "stored and archived" emails for internal communications in 2004 to and from Anderson, or any other Global Crossing employee, relating to the Concurrence Agreement in response to plaintiffs' document request. (Docket ## 195 at 12; 200, Ex. B at ¶ 8).

■ The Federal Rules of Civil Procedure permit a party to withhold production of electronically stored information provided that such information derives from sources "that the party identifies as not reasonably accessible because of undue burden or cost." Fed.R.Civ.P. 26(b)(2). As the Advisory Committee has further commented,

> Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible.... The responding party must also identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

Fed.R.Civ.P. 26, advisory committee's note (2006). Whether a court should thereafter require a responding party to search such inaccessible sources depends upon the burdens and costs of the search and production, balanced against "the potential benefits of discovery." *Id.* In making that assessment, a court should consider:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have exist-

ed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

*Id.* Under this framework, a court may decline to order production of relevant electronically stored information from inaccessible sources if that information is available from accessible sources. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 323 (S.D.N.Y. 2003) (one of the two most important considerations is "the availability of such information from other sources").

 Here, Global Crossing asserts that internal emails from 2004 were not reasonably accessible at the time plaintiffs served their document demands. (Docket # 200 at 4). In support of that contention, Global Crossing has offered an affidavit from Steven E. Schafer ("Schafer"), Global Crossing's Director of Internal Collaboration Services, who is responsible for its electronic email system. (Docket # 195, Ex. 12 at ¶ 1). According to Schafer, the emails that U.S. Telesis seeks are stored "in Exchange 5.5 databases that are housed on an external 4TB storage array." (*Id.* at ¶ 3). Schafer affirms that the task of searching those databases and producing relevant emails could be handled in-house, although it would require new software, and would take approximately four weeks to complete. (*Id.* at ¶¶ 3–4). He estimates that the total cost to Global Crossing would be $13,000. (*Id.*). Global Crossing acknowledges that the requested emails from 2004, "if any there were [at the time the document requests were served], presumably still exist." (Docket # 214 at 2).

Significantly, when Global Crossing responded to Document Request No. 25, it did not object on the grounds of burden or cost. Nor did it identify its archives as a source of potentially responsive information that it was not searching. Simply put, Global Crossing has never contended—until now—that the requested emails were not reasonably accessible. Rather, Global Crossing simply elect-

ed not to search for archived electronically stored information, even knowing that Anderson's laptop had crashed, but never chose to advise plaintiffs of that decision.

 If the Federal Rules of Civil Procedure are to be effective and meaningful, parties should not be permitted to conceal potential sources of responsive information in the hope that the opposing party does not discover their deliberate omission until the discovery deadline has expired. In this case, having represented in its discovery response that it would produce all relevant responsive documents and information, Global Crossing may not now argue that to do so would be unjustly burdensome. *E.g., Land Ocean Logistics, Inc. v. Aqua Gulf Corp.*, 181 F.R.D. 229, 236 (W.D.N.Y.1998) (failure to object to discovery requests generally results in a waiver of those objections); *Allen*, 1985 WL 191 at \*2 (directing party that failed to object to document request and promised to produce all relevant documents to supplement response under Rule 26(e) because it "waived its right to object to plaintiff's request and cannot now be heard to say it may withhold production").

 Nor is there any merit to Global Crossing's contention that it was not required to produce emails because plaintiffs' document requests did not specify the form in which the electronically stored information was to be produced. (Docket # 200 at 6). Although Rule 34 *permits* a requesting party to identify the form in which the information should be produced, it does not *require* a party to do so. *See* Fed.R.Civ.P. 34(b)(1). Here, plaintiffs' request defined "documents" to include "electronic mail," thus obligating Global Crossing to object or produce the requested 2004 emails.

Accordingly, Global Crossing must supplement its production under Rule 26(e) by searching its archived databases for internal email communications from 2004 relating to the Concurrence Agreement and producing any such emails to U.S. Telesis. I find no justification on the record before this Court to shift all or part of the cost to U.S. Telesis.

**360**

### III. *Attorneys' Fees in Connection with September 2009 Deposition*

Finally, in a Report and Recommendation dated July 23, 2010, I recommended that the district court grant Global Crossing's request for an order requiring plaintiffs jointly and severally to reimburse it for expenses incurred in connection with a deposition that was noticed for September 2009, but did not occur. (Docket # 205 at 14). I further directed the parties to confer about those expenses and to advise this Court if an agreement could not be reached. (*Id.* at 14–15). On August 16, 2010, this Court received a letter from counsel for Global Crossing advising that Global Crossing had requested reimbursement of fees and expenses in the amount of $9,782.57, but that plaintiffs had not agreed to that amount. (Docket # 214, Ex. 1). On August 26, 2010, Judge Telesca adopted this Court's Report and Recommendation and ordered plaintiffs to bear the expenses incurred in connection with the deposition, noting that the parties had not agreed upon the amount and directing the parties to submit the matter to me for determination. (Docket # 211 at 8–9 n. 2).

Having reviewed the documentation that Global Crossing has submitted in support of its request for $9,782.57 in fees and costs, I find that the amount requested is reasonable. Accordingly, plaintiffs are ordered to reimburse Global Crossing $9,782.57 in connection with the noticed deposition.

### CONCLUSION

For the reasons stated above, U.S. Telesis's motion to compel Global Crossing to supplement its production (**Docket # 190**) is **GRANTED.** Global Crossing shall search its archives for internal email communications responsive to plaintiffs' Document Request No. 25 and shall produce any responsive documents by no later than **May 1, 2011.** It is further ordered that plaintiffs jointly and severally shall reimburse Global Crossing for its fees and expenses in the amount of $9,782.57.

**IT IS SO ORDERED.**